IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Tiffery Williams, Individually and similarly situated individuals** § § §<br>**Plaintiffs,** § § § § § | | |
| **v.** § § | **CIVIL ACTION NO. 4:17-cv-01901** | |
| **Guardian Living Services, INC., and Christina E. Kizzee** § § § § § §<br>**Defendant.** § | **JURY TRIAL DEMANDED** | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

### SUMMARY

Plaintiff Tiffery Williams ("Plaintiff") files this Complaint, individually and on behalf of similarly situated individuals, against Defendant Guardian Living Services, INC. and Christina E. Kizzee (collectively as "Defendants") for unpaid overtime which is in violation Federal Labor Standards Act ("FLSA").

### JURISDICTION AND VENUE

1. This Court has jurisdiction because Plaintiff's claims arise under federal law pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §216(b).

2. Venue is proper because Defendants reside in this District and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District.

### THE PARTIES

3. Plaintiff Tiffery Williams is an individual who resides in Missouri City, Texas. Her consent to join this lawsuit is attached. Exhibit 5

4. Defendant Guardian Living Services, INC. may be served with process by serving its registered agent, Christina E. Kizzee at 8700 Commerce Park, Suite 104, Houston, Texas 77036, or wherever she may be found.

5. Defendant Christina E. Kizzee may be served with process by serving her at 8700 Commerce Park, Suite 104, Houston, Texas 77036, or wherever she may be found.

## PLAINTIFF'S INDIVIDUAL & CLASS ALLEGATIONS

6. Defendants are in the business of providing individuals or patients, assistance with their daily living, including but not limited to, bathing, dressing, grooming, and eating.

7. Defendants runs boarding homes for adults with mental or developmental disabilities.

8. Defendants are paid with Medicaid funds through the Texas Health and Human Services (HHS) under a program called Home and Community-based Services (HCS) Program.

9. Defendants are Home and Community-based Services Program Providers. Defendants must comply with HCS program rules.

10. Defendants employed Plaintiff as a Direct Care Staff.

11. Plaintiff worked in shifts with other Direct Care Staff in order to provide care to patients 24 hours a day 7 days a week.

12. As a Direct Care Staff, Plaintiff's job duties included mopping the floor at the center, cleaning patient rooms, prepare lunch for the patients, assist them in daily activities, transport patients to their doctor appointments, inspecting the patients for injuries or abuse and filling out paperwork.

13. Plaintiff regularly worked in excess of forty hours per week.

14. A copy of Ms. Williams' signed job duties are attached as Exhibit 1.

15. The purpose of Ms. Williams' position is described by the Defendants as

" Purpose: This position provides the basic daily care that is required by the Individual. It assists the Individuals in attaining and maintaining maximum functional independence. It supports and promotes the rights of Individuals and functions effectively as a member of Interdisciplinary Team."  See Exhibit 1

16. In their job description, Defendant requires Plaintiff and each Direct Care Staff to "meet HCS Certification Standards and Rules."

17. Defendants have clear written guidelines on what constitutes abuse and neglect. Defendant's written policies that describes different types of abuses:

> Examples of serious physical injuries include, but are not limited to, the following: fractures, disclosure of any joint, internal injury, non-superficial contusion, concussion, first-, second-, or third-degree burn or any laceration requiring sutures.

> Examples of non-serious physical injuries include, but are not limited to the following: superficial laceration, contusion, or abrasion.

See Exhibit 2.

18. Defendant has written policies on how to identify different levels of abuse and neglect of their patients (See Exhibit 2) and a reporting policy for suspected cases of abuse, neglect or exploitation (See Exhibit 3).  Exhibits 2 and 3 are copies of Defendant's policies on the identification and reporting of abuse and neglect.

19. Defendant requires employees to report to Texas Department of Family and Protective Services (TDFPS) within one hour after suspicion or knowledge of abuse, neglect or exploitation.  (See Exhibit 3)

20. Defendant's policy states that "Failure to report suspected Abuse, Neglect, and/or Exploitation: Anyone failing to report suspected abuse, neglect, and/or exploitation of individuals within one hour is subject to disciplinary action, including termination and/or possible criminal prosecution." See Exhibit 3

21. Once a Direct Care Staff's begins the shift, he or she assumes responsibility for the welfare of their patients.

3

22. Direct Care Staff are required to report abuse, neglect, or explitation of patients by other Direct Care Staff.

23. A Direct Care Staff can be held responsible for any injury or bruising of a patient during his or her shift.

24. Any signs of injury or neglect of patients that occurred during the shift of a Direct Care Staff will be reported to Defendants and TDFPS within one hour of discovery.

25. As a result, Ms. Williams would arrive at work before her shift started in order to physically inspect (welfare check) the patients before she assumed responsibility of the patients from the Direct Care Staff on the previous shift.

26. Based on reasonable belief, all Direct Care Staff arrive before their assigned shift in order to pre-inspect their patients for injury, neglect, and abuse.

27. The pre-inspection preformed by Ms. Williams and other Direct Care Staff were performed off the clock.

**Off the Clock Work Work**

28. Defendants discouraged Plaintiff and other Direct Care Staff (DCS) from reporting overtime.

29. As a result of Defendant's time keeping instruction, Plaintiff and other (DCS) did not log the pre-shift time they spent inspecting patients for abuse, neglect or exploitation.

30. Plaintiff and all DCS arrived at work before their shift to conduct welfare check on their patients to receive verbal shift reports from the DCS they were relieving.

31. If a DCS for the next shift was date or did not come to work, Plaintiff or who ever was the DCS on duty would have to stay and work late until they could be relieved.

32. Defendants instructed Plaintiff and other Direct Care Staff to log only the time they were assigned to work not their actual start or end time.

4

33. With only three exception, Plaintiff was not permitted to record overtime.

34. Direct Care Staffs are paid an hourly rate.

35. Direct Care Staffs are not compensated a time and a half of their regular rate for all the hours they work in excess of forty each work week.

### **Record Keeping Violation**

36. Defendant failed to keep accurate time records of the hours worked by Plaintiff.

37. A review of Plaintiff's handwritten time records shows that the date next to her signature at the bottom of the timesheet would be the beginning date of the three weeks of time records.

38. Ms. William's predated and wrote her timesheet before she began to work each pay-cycle.

39. Defendants were in a position to identified that the date that Ms. Williams placed next to her verification signature at the bottom of each timesheet predated the time records on the timesheet.

40. Defendants failed to maintain contemporaneous time records of the hours worked by Ms. Williams.

41. Ms. William's timesheet always shows that she started work at her assigned 7:00 a.m. shift.

42. Ms. Williams was not permitted to record the pre-shift welfare check she conducted on her patients.

43. Defendants were aware that Ms. Williams and other DCS conducted pre-shift welfare check on their patients off the clock.

44. Defendant limited the amount of overtime Plaintiff and class members could report.

45. As a result, Defendant failed to maintain accurate records of the hours worked.

## FLSA COVERAGE

46. Plaintiff was employed by Guardian Living Services, INC. within the meaning of the FLSA and was engaged in interstate commerce as defined by the FLSA.

47. Guardian Living Services, INC. is a Texas corporation doing business in the State of Texas.

48. Guardian Living Services, INC. employed Plaintiff and is, or is part of, an enterprise engaged in interstate commerce and is subject to the FLSA.

49. Guardian Living Services, INC. (or the enterprise of which it is a part) has gross annual revenues of $500,000 or more.

50. Guardian Living Services, INC. employs at least two individuals who handled, produced, sold or worked on goods or materials produced for commerce.

51. Plaintiff and putative class members are and were at all relevant times a non-exempt employee under the FLSA.

52. Guardian Living Services, INC. either knew or showed reckless disregard for whether its payroll practices violated the overtime provisions of the FLSA.

### INDIVIDUAL LIABILITY

54. At all times relevant to this lawsuit, Defendant Christina E. Kizzee had the authority to hire and fire Direct Care Staffs, including the Plaintiff.

55. At all times relevant to this lawsuit, Defendant Christina E. Kizzee had the authority to direct and supervise the work of all Direct Care Staffs, including the Plaintiff.

56. At all times relevant to this lawsuit, Defendant Christina E. Kizzee had the authority to sign the paychecks and raise or lower the compensation of all Direct Care Staffs, including Plaintiff.

57. Defendant Christina E. Kizzee is the owner of Defendant Guardian Living Services, INC. because she is the only Director and Registered Agent for Defendant Guardian Living Services, INC.

58. Defendant Christina E. Kizzee had direct control over the operations of Guardian Living Services, INC. and was responsible for ensuring that Guardian Living Services, INC. complied with the FLSA.

59. Defendant Christina E. Kizzee is listed as the Supervisor for Plaintiff's job description. See Exhibit 1.

60. Defendant Christina E. Kizzee is listed as the Supervisor for every job description form similar to Exhibit 1 that are signed by all Direct Care Staff in 2015 and 2016.

61. Accordingly, pursuant to 29 U.S.C. §203 (d), Defendant Christina E. Kizzee acted directly or indirectly in the interest of an employer in relation to Plaintiff and the other Direct Care Staffs, so as to render said Defendant Christina E. Kizzee liable under the FLSA.

## CAUSES OF ACTION

62. Plaintiff incorporates the allegations in the preceding paragraphs.

63. As set forth above, Defendants violated the FLSA by failing to pay Plaintiff and the class of Direct Care Staffs correct overtime compensation. Accordingly, Plaintiff and Class Members are entitled to recover their unpaid overtime wages.

64. Under the FLSA, Plaintiff and Class Members are entitled to an amount equal to his unpaid overtime wages as liquidated damages, as well as reasonable attorney's fees and costs.

## JURY TRIAL

65. Plaintiff demands a jury trial.

**PRAYER**

WHEREFORE, Plaintiff request that this Court award them judgment against Defendant for:

    a)    unpaid overtime pay;

    b)    an equal amount as liquidated damages;

    c)    reasonable attorneys' fees, costs, and expenses of this action; and

    d)    such other and further relief as may be allowed by law.

Respectfully submitted,

TRAN LAW FIRM

/S/Trang Q. Tran
Trang Q. Tran
Federal I.D: 20361
Texas Bar No. 00795787
2537 South Gessner Road, Suite 104
Houston, Texas 77063
Tel: (713) 223 – 8855
Fax: (713) 623 – 6399
ttran@tranlawllp.com

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 6, 2017, a true and correct copy of the foregoing document was served as follows:
*Via ECF*
Terrence B. Robinson
TB Robinson Law Group, PLLC
1616 S. Voss Rd., Suite 870
Houston, Texas 77057
**ATTORNEYS FOR DEFENDANTs**

                                                    /s/ *Trang Q. Tran*
                                                     Trang Q. Tran